MECHANICVILLE WAR CHEST, INC., Plaintiff, *v.* ANDREW M. RYAN, Defendant.

(County Court, Saratoga County, February, 1920.)

Subscriptions — "War Chest" fund — what is a valid and enforcible subscription — associations — pledge — evidence — pleading — actions.

> An association incorporated to solicit subscriptions to a "War Chest" fund, upon the strength of the pledge cards of the individual subscribers, which were treated as assets, appropriated to the various so-called war charities amounts aggregating a considerable sum of money, all of which were paid. *Held,* that each individual pledge was a valid and enforcible subscription, and in an action to recover thereon defendant's motion to dismiss causes of action predicated thereon will be denied and plaintiff's motion for the direction of a verdict will be granted.
>
> One cause of action alleged in the amended complaint was predicated upon the theory of a promise by defendant to become a member of the association and its willingness to receive him. *Held,* that defendant never having paid the first installment of his subscription as a condition precedent to membership, never became a member of plaintiff and could not be held liable upon the theory of a contractual obligation of a member to pay his dues, and his motion to dismiss such cause of action will be granted.
>
> Defenses of fraud, want of incorporation, and want of consideration, dismissed solely upon the ground that they were wholly unsupported by the evidence.

ACTION to recover the sum of $204 upon a written subscription agreement whereby the defendant prom-

ised to pay to the " Mechanicville War Chest," for the purposes for which it was organized, the sum of $204, such payments to be made to " F. S. Clute, Treasurer, or his successor in office."

After receiving a large number of similar pledges the corporation treated them as assets, and upon the strength thereof appropriated to the various so-called war charities amounts aggregating $66,000, all of which were paid. The defendant having refused to pay his subscription, this action was instituted and was defended upon the grounds of a denial of incorporation, lack of consideration, and the claim that at the time the pledge card was signed the members of the committee who solicited the pledge were guilty of fraudulent representations and concealments as to the purpose thereof.

The case, except as noted in the following opinion, is precisely the same in its facts as those discussed in the opinion of the Saratoga county judge in the action of *Mechanicville War Chest, Inc.,* v. *Butterfield,* 110 Misc. Rep. 257.

At the close of the evidence on both sides the attorneys presented numerous motions in respect to the pleadings, the defendant moving for a nonsuit, and the plaintiff for the direction of a verdict.

In granting the plaintiff's motion for a direction of the verdict the following opinion was delivered by the county judge:

Robert Fisher, for appellant.

H. A. Gordon, for respondent.

McKELVEY, J. The several motions submitted by both sides present troublesome and somewhat complicated questions of law; for which reason, as well as because of the fact that this case will probably have

29

County Court, Saratoga County, February, 1920. [Vol. 110.

some bearing upon other similar controversies, I have decided that, in passing upon these motions, I should briefly state upon the record the reasons which prompt me to the decision about to be made; to the end that if any of these cases shall be reviewed in the appellate courts, those courts may have some direct evidence before them of the reasons upon which this determination is based.

The defendant, by signing the so-called pledge card, became chargeable with knowledge of the fact, and he frankly admits that he knew that the War Chest was an organized body of some character, intended to fulfill some purpose in the community; for his promise is to pay to " the Mechaniciville War Chest for the purposes for which it is organized;" and the payment is to be made to " F. S. Clute, Treasurer, or his successor in office."

The defendant is an intelligent man, experienced in business affairs, at present a merchant in the city of Mechanicville, and either now, or at one time, a prominent director of one of the banks of that city. He knew, or he could have ascertained in the exercise of reasonable diligence, and is, therefore, chargeable with at least implied knowledge of the fact, that the payee named in the card was the treasurer of a corporation organized for the purposes stated in the charter or certificate of incorporation, which was easily accessible, because necessarily upon the public files; and he also became chargeable at least with implied knowledge of the fact that the by-laws of the corporation were, or were likely to be, in existence; for the purposes of a corporation are necessarily stated in its certificate of incorporation, and the duties and obligations of its members are, in large part, fixed by its by-laws.

Having access to the certificate, and means of ascer-

taining the nature of the by-laws, he became, when he signed the so-called pledge card, charged with implied knowledge of the conditions of each of these documents; as the result of which, he stands, in this action, bound with actual knowledge of the conditions of the card, and with implied knowledge, at least, of the purposes and uses to which the funds were to be appropriated and of the identity of the organization to whose control and care they were to be intrusted.

Thus placed upon inquiry, he could have ascertained, even if it could be assumed that he did not actually do so, that the plaintiff was an incorporated association, organized for the systematic and responsible management and distribution of the so-called war charities which were engaging the attention of the people at that time; that its work was to solicit, through the medium of responsible committees, subscriptions to a single fund, which was to be later distributed among such war charities as were specified in, or reasonably to be inferred from, the language of the charter; that pledges thus obtained were considered as assets, and payments from the fund were likely to be made and other obligations incurred upon the strength of such pledges. In return for which, the subscribers received the benefit of securing the management and control of their gifts by a responsible local agency, and were relieved of the annoyance and uncertainty of the numerous disconnected individual efforts, which had been the experience of the preceding months. In legal effect, he requested the plaintiff to assume this burden and the plaintiff accepted the responsibility. He admits that he knew, in a general way, of these purposes and intentions of the organization, and he made no inquiries of the committee in that regard.

The proof fairly establishes that, subsequent to the signing of the pledge card or subscription, in a general

way, at least, the plaintiff complied with the provisions of its charter and by-laws, and upon the strength of such pledges its work was undertaken and performed, and large sums collected and distributed among the so-called war charities, offices being maintained and agents employed for the proper management and conduct of the work.

Under such circumstances, and if no issue of fact can be held to have arisen from the proof before this court, I must hold and determine that the pledge of the defendant is a valid and enforcible subscription agreement, for the reasons here suggested, and such others as are more fully stated in the opinion of this court in the recent decision in the case of *Mechanicville War Chest, Inc.,* v. *Butterfield,* 110 Misc. Rep. 257; and I predicate this opinion, to a considerable extent, upon the reasoning of the Court of Appeals in *Keuka College* v. *Ray,* 167 N. Y. 96, and earlier cases there cited.

There is, however, a slight distinction between this and the *Butterfield* case, to which I should call attention at this time. I held in the *Butterfield* case, in view of the payment of the first installment, that by signing the pledge card, the defendant became a member of the corporation; but in this case no such payment was ever made, and inasmuch as the by-laws require the payment of the first installment as a condition precedent to membership, that condition not being fulfilled, this defendant never became a member of the corporation, and could not be held liable on the theory of the contractual obligation of a member of a corporation to pay his dues. I feel, therefore, that that cause of action asserted by the plaintiff which is predicated upon the theory of a promise by the defendant to become a member of the corpora-

tion, and the plaintiff's willingness to receive him, cannot be sustained.

Upon the reasoning of the *Keuka College* case, which I have attempted to follow in the decision of this court in the *Butterfield* case, this pledge is an enforcible subscription agreement, unless it shall appear that an issue of fact is presented by the determination of which the jury would be authorized to relieve the defendant of responsibility.

In a case of this kind, where such an unfortunate controversy has arisen between men of undoubted integrity and honesty on each side, and, especially where, as here, all the parties are so well and so favorably known to the court, there would be a natural tendency to submit the issue to a jury for determination, if that procedure could be followed; but I seriously doubt whether such an issue has been presented.

In the *Butterfield* case I held, and I now again determine, that the omission of the letters " Inc.," from the description of the organization in the pledge card, is an immaterial variance by which the defendant was neither deceived nor prejudiced. There was only one organization engaged in this, or similar, work, thus or similarly designated, and the omission was entirely natural and immaterial. That proposition, therefore, raises no issue of fact.

Nor is an issue of fact presented as to the incorporation of the plaintiff. Upon the undisputed evidence, I hold and determine that the proceedings were regular, sufficient and proper.

As to the conduct of the corporation in the management of its affairs and the distribution of its funds, I have received evidence on the part of the plaintiff as to certain of its expenditures in support of its claim that the funds were set apart and distributed for the

County Court, Saratoga County, February, 1920.    [Vol. 110.

general purposes stated in its certificate and by-laws, and expenses incurred upon the strength of the pledges received. Necessarily, the defendant has been permitted to inquire into the truth of this evidence, and some of the items appear to be criticized as not fairly within the scope of the purposes of the organization. But, as I held in the *Butterfield* case, the question of waste and mismanagement cannot be litigated in this action, and any such debate is irrelevant here. I do not consider it my duty to direct or permit the jury to pass upon such an issue in an action of this character.

The only subject upon which there appears to be even the semblance of an issue of fact arises from the claim of fraud asserted by the defendant, which is attempted to be supported by his testimony that he was informed that the money was to be used for " the boys," and that the fact of incorporation and the general uses intended were concealed from him. This testimony is denied by the three solicitors, and if I felt that it could, in any wise, affect the legal rights of the parties, I would very gratefully submit to the jury for their determination the question whether such representations were made or concealment existed. But this I cannot logically do, because, in my opinion, even assuming the testimony of the defendant to be true, for the purposes of this ruling, no fraud was established in a legal sense, nor mismanagement or concealment of a material fact. The defendant was not deceived or damaged in any such respect as to constitute fraud or avail as a defense to this action.

I might say upon this subject that while I have doubted the legal sufficiency of the defendant's pleading, in so far as it asserts this defense, I have considered it better to predicate the ruling upon the evidence rather than upon the pleadings, and have, for that reason,

denied the plaintiff's motion to dismiss until the present time.

No facts have, therefore, been established by the defendant which, in the opinion of this court, create an issue for the determination of the jury, or establish a defense as matter of law; and having held in this, and similar controversies, that the pledge is, under these circumstances, a valid and enforcible subscription agreement, I proceed to make the following disposition of the case:

*First.* I grant the defendant's motion to dismiss the first cause of action alleged in the amended complaint — that which is predicated upon the theory of an application by defendant for membership in the corporation, and a willingness by the plaintiff to receive him as such member.

*Second.* I deny the defendant's motion to dismiss the second and third causes of action alleged in the amended complaint — those which are predicated upon an enforcible subscription agreement.

*Third.* I grant the plaintiff's motion to dismiss the defenses of fraud, want of incorporation and want of consideration, upon the ground that they are wholly unsupported by the evidence, and not upon a question of pleading.

*Fourth.* I grant the plaintiff's motion for the direction of a verdict upon the second and third causes of action, in favor of the plaintiff and against the defendant, for the relief demanded in the complaint, namely, for the sum of $204, with interest thereon from the 1st day of June, 1919, the date when the last payment was due.

Ordered accordingly.